IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**DERRICK DARNELL PAYNE**                                                **PLAINTIFF**

vs.                                                CIVIL ACTION NO.: 3:11cv136-GHD-DAS

**BENTON COUNTY, et al.**                                             **DEFENDANTS**

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

Plaintiff, proceeding pro se and *in forma pauperis*, brings suit against Defendants under 42 U.S.C. §1983 alleging that Defendants conspired to maliciously prosecute him for the crime of capital murder. Pending before the Court are Defendants' motions for summary judgment and Plaintiff's responses thereto. Having fully considered the submissions of the parties and the applicable law, the Court finds that the motions for summary judgment should be granted, for the reasons that follow.

### Record History[1]

Plaintiff was selling drugs in 2004. Reginald Walls, a resident of DeSoto County, Mississippi, had served as one of Plaintiff's runners in the drug trade on a few occasions. (*See* Pl.'s Trial Tr. 5, Ex. A to Def. Thompson Mot. Summ. J. Memo at doc. entry no. 59). Walls disappeared in May of 2004, and when an investigation into his disappearance was launched by the DeSoto County Sheriff's Department, law enforcement officers learned of the relationship between Plaintiff and Walls. (*See id.* at 118, 140-41).

In 2006, Plaintiff's then-wife, Lakentra, was being held in the Marshall County Jail on a

---

[1] The facts underlying this claim are taken from the trial transcript of Plaintiff's murder case. (*See* doc. entry no. 59, Exhibit A).

1

charge of forgery. (*See id.* at 25-26, 40-41, 79). When she was questioned about Walls' disappearance, she informed Marshall County officers that she witnessed Plaintiff shoot Walls, and she stated that she knew the general location of the body. (*Id.* at 118-19). After the Marshall County Sheriff's Office contacted State Investigator Alan Thompson, who agreed to assist in the search for Walls' body, Lakentra gave another statement to FBI agent Larry Peagues, Defendant Thompson, and Deputy Kelly McMillan of the Marshall County Sheriff's Department on February 27, 2006. (*Id.* at 138-39). Investigating officers traveled with Lakentra to an approximate location in Benton County where she believed Walls' body was placed, although she could not identify the specific road Plaintiff had turned down the night of the murder. (*Id.* at 16, 51-56). After searching an area that matched the description given by Lakentra, Walls' body was located and an arrest warrant issued for Plaintiff on a charge of capital murder. (*See id.* at 124). The District Attorney's Office pursued an indictment against Plaintiff, and Defendant Thompson was the only witness to testify at the grand jury proceedings. (*See* Preliminary Hr'g Tr. 14-15, Ex. C to Defs. Mot. Summ. J. Memo at doc. entry no. 57). Lakentra was later indicted on a charge of accessory after the fact. (*See* Pl.'s Trial Tr. at 58-59).

Plaintiff's capital murder trial commenced on June 29, 2009, before the Circuit Court of Benton County, Mississippi. Lakentra testified at trial that she and Plaintiff, who divorced in April 2007, had known Walls "pretty well." (*Id.* at 3-5). She stated that on or about May 9, 2004, she and Plaintiff had a few drinks with Walls at a club, and that they decided to leave the club and go to Club Emotion in Marshall County. (*Id.* at 10). She maintained that, prior to their arrival at Club Emotion, Lakentra put some "sleep drops" in Walls' liquor upon Plaintiff's instructions. (*Id.* at 13, 23). She testified that Walls became sick, and the trio left Club Emotion

2

around 11:00 p.m., headed toward Benton County. (*Id.* at 11, 13). She alleged that, after driving down a dirt road for a few minutes, Plaintiff pulled the car over and questioned Walls about drugs Plaintiff believed Walls had stolen. (*Id.* at 7, 12). She maintained that Walls exited the vehicle with her help, and that when Walls denied having any knowledge of the missing drugs, Plaintiff grabbed him and shot him multiple times. (*Id.* at 13-14). Lakentra stated that Plaintiff dragged Walls' body over a hill, and that she and Plaintiff then drove to a convenience store in Memphis, Tennessee. (*Id.*).

On cross-examination, Lakentra testified to the circumstances of her statement. She stated that she was motivated to confess because she had been having dreams that she felt were a "sign that God gave [her] to do the right thing" when asked about the crime. (*See id.* at 42). She specifically denied that she was threatened by law enforcement officers. (*See id.* at 55). She also testified that she took officers to the approximate location where Walls' body was located, but that she could not pinpoint the location because the murder occurred years earlier in an unfamiliar location. (*See id.* at 53-58). She maintained that she voluntarily gave statements to law enforcement officers and agreed to testify without a plea offer out of a desire "to do the right thing[.]" (*Id.* at 24).

Defendant Alan Thompson testified at trial that he was a Captain with the Mississippi Bureau of Investigation during the investigation of Walls' murder, and that he worked the case in cooperation with local law enforcement agencies. (*See id.* at 115-16). He stated that he had been made aware of Walls' disappearance in 2004, such that he had some familiarity with the circumstances when he went to interview Lakentra. (*Id.* at 118-20). After her statement was taken on February 27, 2006, he maintains that he contacted Benton County Sheriff McMullen,

3

because the area described by Lakentra was in or near Benton County. (*Id.* at 121). He stated that, once in the approximate area, Defendant Thompson and other law enforcement officials realized the roads had been recently paved. (*Id.* at 123-24). Following a search of the area, he maintained, Walls' remains were found in an area "exactly the way Lakentra had pictured it[.]" (*Id.* at 124). He denied that any coercive techniques were used during the course of the interview with Lakentra. (*Id.* at 146-48).

Plaintiff took the stand in his own defense. He was found not guilty and acquitted of all charges on July 3, 2009. (*See, e.g., id.* at 313).

### Plaintiff's Allegations and Relief Sought

Plaintiff claims that Defendants coerced Lakentra into implicating him in Reginald Walls' murder. At the time Lakentra gave a statement to police implicating Plaintiff in the murder, she was being held as a pretrial detainee at the Marshall County Sheriff's Department. Plaintiff maintains that the Marshall County Sheriff's Department instigated the investigation and prosecution against him because he had previously been acquitted on charges of bank robbery in Marshall County. He alleges that, out of a desire to falsely implicate him in the circumstances surrounding Walls' disappearance and murder, Defendants threatened to take Lakentra's baby away from her if she did not cooperate.

In the instant suit, Plaintiff alleges violations of his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments, along with claims of malicious prosecution and civil conspiracy. Named as defendants in this action are Benton County, the Benton County Sheriff's Department, Marshall County Sheriff's Investigator, Kelly McMillan, the Sheriff of Benton County, Arnie McMullen, and Alan Thompson, a retired Captain with the Mississippi Bureau of

4

Investigation. Defendants McMillan and McMullen are sued in both their official and individual capacities, while Defendant Thompson is sued in his individual capacity only.

Plaintiff maintains that his capital murder prosecution has caused him mental pain and anguish, and that he has been forced to increase his medications since being prosecuted for capital murder. He seeks compensatory damages in the amount of $1 million dollars and punitive damages in the amount of $500,000 against each named defendant. He also requests state tort damages for malicious prosecution in the amount of $500,000 against each named defendant.

### Defendants' Allegations

Defendants Benton County, Marshall County, Kelly McMillan, and Arnie McMullen have moved for summary judgment, maintaining that Plaintiff's prosecution was supported by probable cause, such that there is no genuine issue of material fact as to whether the prosecution on capital murder charges violated his constitutional rights. They further maintain that there was no causal link between Plaintiff's prosecution and a Benton County or Marshall County policy or custom as necessary for liability to attach to the County defendants. Finally, Defendants maintain that they are entitled to qualified immunity for the claims against them in their individual capacities. Likewise, Defendant Alan Thompson has also moved for summary judgment, asserting that he is entitled to qualified immunity.

### Summary Judgment Standard

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v.*

5

*Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if "its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Celotex*, 477 U.S. at 323. The nonmovant cannot rely upon "conclusory allegations, speculation, and unsubstantiated assertions" to satisfy his burden, but rather, must set forth specific facts showing the existence of a genuine issue as to every essential element of his claim. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted); *Morris*, 144 F.3d at 380. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no proof is presented, however, the Court does not assume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### County and Official Capacity Claims[2]

Plaintiff's claims against County officials in their official capacities are the same as claims against the County itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Therefore, Plaintiff's claims against Kelly McMillan and Arnie McMullen in their official capacities are construed as claims against Marshall County and Benton County, respectively. Under § 1983, a

---

[2] The Sheriff's Department of either sued county is not a governmental entity amenable to suit in this action, because it does not have a separate legal existence apart from the county. *See, e.g., Brown v. Thompson*, 927 So.2d 733, 737 (Miss. 2006); *see also Darby v. Pasadena Police Dept.*, 939 F.2d 311, 313 (5th Cir. 1991).

municipality is not vicariously liable for its officer's actions on a theory of *respondeat superior*. See *Bd. of County Commiss of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). To impose liability on either County, Plaintiff must prove that his injury was caused due to action taken pursuant to a municipal policy or custom. See *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Initially, the Court finds that there is no independent constitutional claim for "malicious prosecution." *Albright v. Oliver*, 510 U.S. 266, 274-75 (1994) (substantive due process does not support malicious prosecution claim); *Cuadra v. Houston Independent School District*, 626 F.3d 808, 812 (5th Cir. 2010). Instead, to sustain his claim, Plaintiff must demonstrate that the prosecution was unsupported by probable cause. See *Cuadra*, 626 F.3d at 812-13. Plaintiff fails to do so. In this instance, the grand jury and State trial court both found probable cause for Plaintiff's prosecution, and Lakentra's testimony was independently verified by the discovery of Walls' body. The Court finds that, to the extent it is raised by Plaintiff, the State law tort of malicious prosecution is likewise barred, as the "want of probable cause in the institution of the proceedings" is a necessary element of the tort. See *Tebo v. Tebo*, 550 F.3d 492, 498-99 (5th Cir. 2008) (citation omitted). In this case, the State prosecution was supported by probable cause as determined by the grand jury and circuit judge.

Additionally, the Court finds that there is no causal link between Plaintiff's prosecution and any policy or custom of either Benton County or Marshall County that allegedly deprived him of a constitutional right. In this case, prosecution was directed by the State of Mississippi's District Attorney's Office, and neither County exercised control over the grand jury proceedings, indictment, or commencement and prosecution of the case. The probable cause determinations

7

of the State trial court supersede Plaintiff's claims of constitutional deprivation by the County defendants. *See Murray v. Earle*, 405 F.3d 278, 291-92 (5th Cir. 2005) (trial court's ruling that evidence is admissible and constitutes probable cause constitute a "superseding cause" for purpose of Section 1983 liability). Therefore, all named Defendants are entitled to summary judgment for Plaintiff's County and official capacity claims.

## Individual Capacity Claims

Qualified immunity is an affirmative defense, though, once it is properly raised, the plaintiff bears the burden of rebutting the defense by demonstrating that the allegedly wrongful conduct violated clearly established law. *See Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). It is a two-pronged inquiry that requires the Court to first determine "whether [the plaintiff] has adduced sufficient evidence to raise a genuine issue of material fact suggesting [the defendant]'s conducted violated an actual constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citation omitted). If the evidence shows that the plaintiff's constitutional rights were not violated, his claims must be dismissed. *Id.* If a violation of a constitutional right is shown by the facts, the second inquiry is "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citation omitted). This determination is "based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Id.; see also Wernecke v. Garcia*, 591 F.3d 386, 393 (5th Cir. 2009). Therefore, in deciding this issue, the Court determines whether the challenged conduct, when viewed in a light most favorable to Plaintiff, amounts to a constitutional violation, and if so, whether the right was

clearly established at the time of the conduct. *See Werneck*, 591 F.3d at 39-93; *see also Saucier v. Katz*, 533 U.S. 194 (2001).

Whether a defendant's conduct was objectively reasonable is an objective inquiry, and "a particular defendant's subjective state of mind has no bearing on whether that defendant is entitled to qualified immunity." *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001) (citation omitted). If all officials of reasonable competence could disagree as to whether the plaintiff's rights were violated, qualified immunity remains intact. *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (quotation omitted). This standard protects "all but the plainly incompetent or those who knowingly violate the law[,]" protecting those officers "who reasonably but mistakenly commit a constitutional violation." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Glenn v. City of Tyler*, 242 F.3d 307, 312-13 (5th Cir. 2001) (internal quotation marks and citation omitted). An inquiry into objective reasonableness is a question of law for the Court. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Defendant McMillan, an investigator with the Marshall County Sheriff's Department, merely questioned Lakentra, who stated that she was not threatened or coerced by the investigating officers. (*See, e.g.*, Pl.'s Tr. 42; 52-55). Plaintiff fails to demonstrate that Defendant McMillan personally participated in any allegedly wrongful acts. Similarly, Plaintiff does not allege that Sheriff McMullen personally participated in the acts alleged by Plaintiff as wrongful, nor does Plaintiff maintain that he implemented an unconstitutional policy that led to the alleged deprivation. *See, e.g. Gates v. Texas Department of Protocol*, 537 F.3d 404, 435 (5th Cir. 2008) (holding that supervisory official may be liable only if he affirmatively participates in acts or implements unconstitutional policies that result in the constitutional injury). Rather, he

9

maintains that McMullen failed to supervise those that pursued a malicious prosecution. As previously stated, the District Attorney's Office pursued the prosecution of Plaintiff, and it was supported by probable cause. Plaintiff has not established that either Defendant McMillan or Defendant Sheriff McMullen violated a clearly established law as it existed at the time of the events leading to Plaintiff's arrest, and both are entitled to qualified immunity.

Finally, the Court considers whether Defendant Alan Thompson is entitled to qualified immunity. At trial, both Lakentra and Defendant Thompson testified that Lakentra was not coerced or threatened during questioning. (*See, e.g.*, Pl.'s Trial Tr. at 42, 55, 58, 122). Therefore, there is no evidence from which a rational jury could find her statement involuntary and its resulting use to violative of Plaintiff's rights. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("Coercive police activity is a necessary predicate to finding that a confession is not 'voluntary' within the meaning of the Due Process Clause.").

Moreover, even if Defendant Thompson did tell Lakentra that she would lose custody of her child unless she cooperated with law enforcement officials, such action would not violate clearly established law. *See Kunik v. Racine County*, 106 F.3d 168, 174-75 (7th Cir. 1997) (holding that defendants did not violate clearly established rights of which reasonable officers would have been aware by playing on the plaintiff's physical vulnerability as a pregnant woman and implying that only by cooperating would she have her baby outside of prison); *Self v. Collins*, 973 F.2d 1198, 1205 (5th Cir. 1992) (holding that "[n]either 'mere emotionalism and confusion', nor mere 'trickery' will alone necessarily invalidate a confession"). Rather, Defendant Thompson told Lakentra to tell the truth, which is a strategy that has been held objectively reasonable. *See United States v. Barfield*, 507 F.2d 53, 56 (5th Cir. 1975); (Pl.'s Trial Tr. at 146).

Defendant Thompson is entitled to qualified immunity.

## Conclusion

The Court finds that Defendants' motions for summary judgment [doc. entry no. 56, 58] should be **GRANTED**, and this action be **DISMISSED WITH PREJUDICE**. All pending motions are **DISMISSED** as moot. A final judgment in accordance with this opinion and order will issue this day.

**SO ORDERED** this the 14th day of November, 2012.

_____
SENIOR U.S. DISTRICT JUDGE